■ In the Matter of NARVANDA S., a Person Alleged to be a Juvenile Delinquent, Appellant. [972 NYS2d 1]—

Order of disposition, Family Court, New York County (Allen G. Alpert, J.), entered on or about January 17, 2012, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed acts that, if committed by an adult, would constitute two counts each of the crimes of sexual

abuse in the second and third degrees and forcible touching, and placed him on probation for a period of 12 months, reversed, on the law, the facts and as an exercise of discretion in the interest of justice, without costs, the first, third, and fifth counts of the petition dismissed, the delinquency finding and dispositional order vacated, and the matter remanded to Family Court with a direction to order an adjournment in contemplation of dismissal pursuant to Family Court Act § 315.3 (1) nunc pro tunc to January 17, 2012.

Although the trial court made no specific findings of fact, the record reveals that the complaining witness testified that on October 18, 2010 at approximately 11:45 a.m., she went to the main office where she and appellant attended school. She saw appellant inside. On the day of the occurrence, the complaining witness was 13 years old and appellant was 12 years old. Although she and appellant had mutual friends, they had not previously talked to each other until that day when, in the school office, he asked her to be his girlfriend. The complaining witness testified she ignored his request and then left the office by herself. Another witness, a paraprofessional assigned to the complaining witness, testified that she observed the two children talking casually in the office and that they left the office together, still engaged in conversation.

It is not disputed that while the complaining witness and appellant were in the public hallway, appellant grabbed her from behind. No one else was in the hallway at the time. The other students were expected to return shortly to their classrooms from the lunch break. The complaining witness testified that appellant "dragged" her down the hallway, explaining that he had grabbed her backpack which stayed between them and that she struggled to shrug it off her back, but was held back by his tugging down on it. Her feet never left the ground. As she tried to get away, appellant reached around and "touched" and "squeezed" both of her breasts and the right side of her buttocks. He also attempted to kiss her and ignored her as she told him, "I need to go to class. I don't like you. No." It was then that appellant asked the complaining witness for "a hug or anything and I'll let you go." She hugged appellant just to get away from him and then went directly to her math class down the hall, where she sat, upset. When her paraprofessional entered the room, she explained what had happened in the hallway. The entire incident in the hallway lasted no more than five minutes.

As the presentment agency concedes, there was no basis for the trial court to have made separate factual findings as to six

separate misdemeanor offenses based on appellant's contact with the complaining witness's breasts and buttocks, because the offending conduct involved "a single, uninterrupted occurrence" (*People v Alonzo*, 16 NY3d 267, 270 [2011]). Accordingly, we dismiss one count each of sexual abuse in the second and third degrees and forcible touching. Nonetheless, the totality of appellant's course of conduct, and his statements to the complaining witness, support the inference that he acted for the purpose of sexual gratification (*see e.g. Matter of Najee A.*, 26 AD3d 258 [1st Dept 2006], *lv denied* 7 NY3d 703 [2006]; *Matter of Kenny O.*, 276 AD2d 271 [1st Dept 2000], *lv denied* 96 NY2d 701 [2001]). The court's findings that appellant committed an act, that, if committed by an adult, would constitute a crime, was, therefore, based on legally sufficient evidence and not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]).

A juvenile delinquency adjudication, however, requires both a determination that the juvenile committed an act, that, if committed by an adult, would constitute a crime and a showing, by the preponderance of the evidence, that the juvenile needs supervision, treatment or confinement (Family Ct Act §§ 345.1, 350.3, 352.1). Although the seriousness of the juvenile's acts is an extremely important factor in determining an appropriate disposition (*see Matter of Alberto R.*, 84 AD3d 593 [1st Dept 2011]), it is not the only factor. The disposition is not supposed to punish a child as an adult, but provide effective intervention to "positively impact the lives of troubled young people while protecting the public" (*Matter of Robert J.*, 2 NY3d 339, 346 [2004]).

While the trial court properly found that appellant committed a delinquent act, there was insufficient support for its decision that appellant needed supervision, treatment or confinement (Family Ct Act §§ 352.1, 350.3). In addition, 12 months' probation was not the least restrictive available alternative that would have adequately served the needs of appellant and society (Family Ct Act § 352.2; *Matter of Justin Charles H.*, 9 AD3d 316 [1st Dept 2004]).

This was appellant's first and only contact with the juvenile justice system both before and after the incident. Although appellant had 24 absences during the 2010-2011 school year, by the fall of 2011, when the hearing took place, his academic performance had improved and he only had four absences, two of which were attributable to court appearances in connection with the underlying petition. The November 2011 probation report indicates that prior to the incident, appellant had also

been associating with some "negative peers" at school, but after the petition was brought, he stopped contact with them. Appellant had no reported history of illegal drug or alcohol use, he was not involved with a gang, and his mother reported that although he sometimes failed do his chores, he adhered to his curfew. She described him as being nice and respectful towards the people in his community which he enjoys. Letters from appellant's school social worker and two of his teachers confirmed his progress in school (80 average) and his regular attendance.

Appellant has been compliant with all court orders and requirements, including the temporary order of protection issued in favor of the complaining witness who attends school with him. He has kept all scheduled court appearances and been cooperative with the probation officer and psychologist. Appellant's mother was present at all court appearances with appellant and she too has been fully cooperative with the probation officer and the psychologist.

Dr. Ables of the Bronx Psychiatric Center reported to the court that appellant's mother agreed that her son would benefit from a program, although she was unsure what had actually transpired at school. Dr. Ables also reported that both appellant and his mother "indicated they would make certain [appellant] attends all scheduled treatment appointments." Dr. Ables recommended a "minimum of 18 months probation supervision" for proper assessment and completion of the program that he offered.

Prior to adjudicating appellant a juvenile delinquent, appellant's counsel moved for an adjournment in contemplation of dismissal with conditions, as well as other less restrictive alternatives to probation. That application was denied, and the court subsequently adjudicated appellant a juvenile delinquent, imposing a disposition of 12 months' probation. The court stated that appellant needs the "services provided by probation and the supervision provided by Dr. Ables," without any explanation why, if the court believed this to be so, it then deviated from Dr. Ables' recommended probation period. The dissent's conclusion, that Dr. Ables' program can be completed in 12 months, is contrary to what Dr. Ables actually reported.[1] The 12 months of probation is not related to anything in this record. In any event, given appellant and his mother's willingness to voluntarily par-

---

1. Twelve months could not have accommodated the assessment process, which could take up to three months to complete, and the treatment itself, which is a group setting meeting once a week for nine months. According to Dr. Ables, it is necessary to factor in school schedules and holidays, and the doctor's own responsibilities of conducting interviews and preparing reports to

ticipate in a recommended program, a lengthy period of court supervision is unnecessary. Monitoring appellant's voluntary compliance could have been accomplished under an adjournment in contemplation of dismissal (*see Matter of Tyttus D.*, 107 AD3d 404 [1st Dept 2013]).

In deciding the least restrictive alternative, the court must also consider the child's background, the stability of the child's home life, the adult supervision available in the home, the child's age at the time of the incident and the progress the child has made since the incident (*see Matter of Besjon B.*, 99 AD3d 526 [1st Dept 2012]; *Matter of Tyvan B.*, 84 AD3d 462 [1st Dept 2011]; *Matter of Julian O.*, 80 AD3d 525 [1st Dept 2011]).

Here, it is conceded by all parties that the trial court, in weighing the seriousness of the acts committed, improperly multiplied them in a manner that was contrary to law (*People v Alonzo*, 16 NY3d at 270). Taking into consideration the serious nature of the remaining charges, and balancing them against this child's stable home life, appropriate parental support and guidance, lack of any prior or subsequent history of contact with the juvenile justice system, and great strides in school performance in the almost 14-month period since the underlying offense, coupled with his full compliance with all court orders and proceedings, and his very young age at the time of the incident, the trial court's disposition was not the least restrictive that could have been ordered (*see Matter of Jonnevin B.*, 93 AD3d 572 [1st Dept 2012]).

An adjournment in contemplation of dismissal, conditioned on appellant's participation in an appropriate program, school attendance and compliance with a permanent order of protection in favor of the complainant, would have sufficed to serve the needs of appellant and society (*see e.g.* Family Ct Act § 352.2 [2] [a]; *Matter of Osriel L.*, 94 AD3d 523 [1st Dept 2012]). Concur—Acosta, Renwick and Gische, JJ.

Mazzarelli, J.P., and Richter, J., dissent in a memorandum by Richter, J., as follows: Although the majority takes no issue with the sufficiency of the evidence, it nonetheless vacates the juvenile delinquency finding and remands with a direction to order an adjournment in contemplation of dismissal (ACD). There is no reason to interfere with the trial court's disposition, and therefore I dissent.

On the day of the instant offense, the complainant, a 13-year-old girl, went into the main office of her school to wait until it

---

the court. Thus, based on the doctor's own experience, he estimated that the entire process would take a "minimum" of 18 months.

was time to go to her next class. While she waited, appellant, who was 12 at the time, entered the office and approached her. He began talking to her, asking her to go out with him and to be his girlfriend. The complainant ignored him, until appellant finally left the office. A few minutes later, the complainant also left to go to class. Appellant, however, was waiting for her in the hallway and grabbed the strap of her book bag and began pulling her down the hall. While the complainant attempted to free herself of the book bag so she could get away, appellant reached around and squeezed her breasts. He also touched her buttocks. The complainant told appellant to "get off" her, but he did not let go. At one point, he grabbed her by the neck and tried to pull her towards him for a kiss. The complainant continued to tell appellant "no."

Appellant held onto her, telling her that if she gave him "a hug or anything," he would let her go. Stating that she felt the only way she could get away would be to do what he asked, the complainant gave him a quick hug and then rushed to class. Frightened, she sat in class trembling, so much so that a teacher's assistant asked her what was wrong. The complainant reported the entire incident to the teacher's assistant.

The Family Court has broad discretion in fashioning a disposition and its determination should be accorded a great amount of deference (*Matter of Donovan E.*, 92 AD3d 881, 882 [2d Dept 2012]). Here, the Family Court determined, after considering the nature of the instant offense and reviewing the reports provided, that an ACD was not appropriate. Rather, the court found appellant required supervision and that 12 months of probation, with the requirement that appellant participate in a sexual offender treatment program, was the least restrictive alternative in light of the needs of appellant and the safety of the community (*see* Family Ct Act § 352.2 [2]). In vacating the juvenile delinquency finding, the majority minimizes the seriousness of the incident, which traumatized the 13-year-old complaining witness. The fact that the complainant and appellant were engaged "in conversation" before the incident does not, as the majority implies, make the incident less serious, but rather makes it more disturbing because the complainant's testimony inexorably leads to the conclusion that appellant's decision to wait outside the office and then to grab her was a direct response to her rejection of his request for a date during this conversation.

The details of the incident raise many questions about appellant's judgment and his ability to control his behavior. Appellant waited in the hall for the complainant to leave the office

and then took hold of the complainant's book bag and dragged her down an empty hall. Appellant then squeezed the complainant's buttocks and breast and grabbed her around the neck. Of note, he grabbed her and tried to kiss her even though she said no. In her written deposition, the complainant explained she told appellant "to get off me several times, but he just laughed and kept dragging me down the hallway backwards." This was neither a quick, unplanned action nor some type of horseplay between adolescents. Rather, it was a forceful act that left the complainant frightened and shaking.

Appellant's truancy history further supported the Family Court's determination that he required greater supervision (see *Matter of Yonathan A.*, 70 AD3d 602, 603 [1st Dept 2010]; *Matter of Jonaivy Q.*, 286 AD2d 645, 646 [1st Dept 2001]). Here, the appellant missed 13 days of school during the 2009-2010 school year and 24 days during the 2010-2011 school year. Appellant's mother also stated that he had been friends with kids who had negative attitudes and would fight in school. His mother noted he had been previously suspended from school for fighting.

The majority points to the fact that between the incident and the disposition date, appellant's attendance had improved and he no longer affiliated with the same friends. The mere fact that appellant did not get into further trouble while his case was under the court's jurisdiction does not establish that he would not misbehave once he no longer had any mandated oversight.[2] In any event, the Family Court's conclusion that 12 months of probation supervision was warranted was not an abuse of discretion in light of the seriousness of the offense and appellant's history of associating with negative peers (see *Matter of Jesus S.*, 104 AD3d 694, 695 [2d Dept 2013] [although this was a first offense, probation was appropriate in light of the recommendation in the probation report]). The Family Court appropriately determined that further supervision was necessary to ensure appellant's behavior did not escalate and he attended the mandated program (see *Yonathan A.*, 70 AD3d at 603 [appellant was already receiving therapy, and probation supervision was found necessary to ensure that he continued to attend treatment]).

The record establishes that appellant refused to take responsibility for his actions. In fact, appellant insisted that he did not do anything wrong and expressed anger for being accused. His failure to admit responsibility and take ownership of his

---

**2.** Although the majority says appellant has not gotten into trouble since the incident, the record only provides information up to January 17, 2012, the date of the Family Court disposition.

behavior, especially considering the seriousness of the instant offense, supports the Family Court's determination that the greater supervision provided by probation was the appropriate alternative (*see Matter of Zion F.*, 92 AD3d 589, 590 [1st Dept 2012]).

An ACD is an inadequate disposition because Dr. Ables, the clinical psychologist who interviewed appellant, recommended he be required to attend a sexual offender treatment program designed for children and adolescents. The psychologist stated that the assessment and treatment process would assist appellant in learning how to take full responsibility for his actions. The program takes place after school and lasts about nine months, but usually lasts longer depending on how much time it takes to evaluate a participant prior to the beginning of treatment. Evaluation can take up to three months. To facilitate his attendance in the program, the psychologist recommended appellant be placed on probation. The majority offers no convincing reason why the Family Court Judge should not have relied on this professional opinion in crafting an appropriate disposition. In fact, the Family Court imposed a term of 12 months' probation, which was slightly less than the 18-month term the psychologist proposed. The six-month ACD proposed by the majority is insufficient to provide the necessary supervision during appellant's participation in this lengthy program (*see Matter of Mia R.*, 102 AD3d 627 [1st Dept 2013]; *Matter of Florin R.*, 73 AD3d 533 [1st Dept 2010]).

The majority unfairly suggests that the trial court's decision cannot be reconciled with Dr. Ables's assessment because it imposed 12 months' probation and not the 18 months recommended by the doctor. Here, the court showed some leniency in imposing a one-year probationary term, further supporting our conclusion that the trial court considered all the necessary facts in crafting an appropriate disposition for this sex offense case.

*Matter of Jonnevin B.* (93 AD3d 572 [1st Dept 2012]), cited by the majority in support of the conclusion that an ACD is warranted, is readily distinguishable. That case did not involve a sexual offense, and this Court found that the appellant only required supervision for less than six months, making an ACD appropriate (*id.* at 572; *see* Family Ct Act § 315.3). Here, given the need for a program, and the limited duration of an ACD, an ACD would be inadequate, "in both scope and duration," to ensure that appellant actually attends the program (*Yonathan A.*, 70 AD3d at 603; *see* Family Ct Act § 315.3; *Matter of Bryant M.*, 82 AD3d 509, 510 [1st Dept 2011]). *Matter of Tyttus D.* (107 AD3d 404 [1st Dept 2013]), also cited by the majority, does not

involve an offense of the type at issue here, and the appellant in that case, unlike appellant here, accepted full responsibility for his actions and as the opinion notes, showed "insight into his misconduct."

In concluding that the disposition of probation was impermissible punishment, the majority substitutes its judgment for that of the trial court, which had an opportunity to see the complainant and appellant. The majority's focus on appellant's claimed willingness to voluntarily attend the program cannot be reconciled with Dr. Ables's conclusion that appellant needed mandated treatment. Appellant never proffered any mental health professional who offered a different conclusion. Further, appellant refused to accept responsibility for his actions even after the court's fact-finding, a factor the majority does not give any weight. It was entirely reasonable for the court to decline appellant's request for an ACD, which vacates the juvenile delinquency adjudication, when appellant himself refused to admit that he had done anything wrong.

Accordingly, we would modify, vacating the findings on the first, third and fifth counts of the petition, and otherwise affirm.